SOJXMERYILLE, J.
Plaintiff sues defendant to confirm a title to property described in its petition, which it acquired from the state of Louisiana under the terms of Act No. 80 of 1888, as amended by Act No. 126 of 1896, which property had been previously sold to the state in 1885, for deliquent taxes of 18S2.
[1] The parties are the same as those in suit No. 19,266 on the docket of this court, and reported in 131 La. 496, 59 South. 915. The object of the suit is the same in both cases, except that the property involved is different; and the defenses are the same, to a certain extent. It is unnecessary to review the law applicable in the former ease. That decision was afiirmed in Quaker Realty Co. v. Labasse, 131 La. 996, 60 South. 661, and in Quaker Realty Co. v. Citizens’ Bank, 131 La. 845, 60 South. 367, and it is affirmed here.
The property involved was vacant at the time of the sale to the state in 1885.
[3] On the question of possession, defendant attempted to show possession in him and his authors in title since the year 1902. But the prescriptive term of three years had then run in favor of the state, under article 233 of the Constitution of the state, and the former owner, or tax debtor, had no interest in the property at the time of the sale in 1901 to defendant or his author in title. We have seen that the state acquired title in 1885. We affirm the ruling made on this point in Norgress v. Schwing, 128 La. 1040, 1043, 55 South. 667, 668, as follows:
“The plaintiff purchased in good faith, paid taxes on the land, and looked after it for a number of years. It was swamp timber land, and no one was in posssession of it at the time of the tax sale. Defendants took possession in the latter part of the year 1909, Prescription ran in favor of the state and its assigns, in the absence of possession by the tax debtor. The constitutional prescription of three years expired in 1901; and, as there was an assessment, and the property was liable for taxes, the title of the plaintiff thereupon became perfect as against the tax debtor, his heirs and assigns.”
Defendant alleges that the sale to the state for delinquent taxes, and the sale by the state through the auditor to plaintiff, were nullities, because (1) there was no legal description of the property, and (2) that the property was not assessed and sold in the name of the owner; and he asks that those sales be set aside.
The objections cannot prevail, for the reason that there are but two exceptions in the law found in article 233 of the Constitution, and neither of the two objections urged are one of them. The article reads:
“No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted * * * within three years from the adoption of this Constitution, as to sales already made, and within three years from the date of recordation of the tax deed, as to sales made hereafter, if no notice is given.”
[2] As defendant took possession more than three years after the adoption of the Constitution of 1898, prescription had run in favor of the state when he claims to have *1025 acquired possession. Defendant does not set up a dual assessment, or that the taxes for which the property had been sold to the state were paid, and he cannot be heard to urge other exceptions. Slattery v. Heilperin & Leonard, 110 La. 86, 34 South. 139; In re Quaker Realty Co., Ltd. (In re Valloft) 127 La. 208, 53 South. 526; Cordill v. Quaker Realty Co., Ltd., 130 La. 933, 58 South. 819; In re Veith, 130 La. 1108, 58 South. 899; Quaker Realty Co., Ltd., v. Purcell, 131 La. 496, 59 South. 915; Leader Realty Co. v. Lakeview Land Co., 6 South. 253, 133 La. 646.
Defendants next attack the sale by the auditor to this plaintiff as being absolutely null, for the reason that the auditor did not comply with the terms of Act No. 126 of 1896, which requires the auditor, in selling property adjudicated to the state for delinquent taxes, to “accept bids therefor equal to the face value of all taxes that may be due thereon,” and that the auditor, as is shown by the title deed itself, did not comply with this law and collect from defendant “the face value of all taxes that may be due thereon.” We have heretofore held that the former owner of the property was without interest to set up the invalidity of a sale made of its own property by the state to third persons. Quaker Realty Co. v. Labasse, 131 La. 996, 60 South. 661.
Defendants argue that by the terms of Act No. 41 of 1912, p. 49, he has been given sufficient interest in the property owned by his vendor to set up the nullity of the sale by the auditor of the state to plaintiff and its vendor. Said act was passed to amend section 6 of Act No. 315 of 1910, which act, in turn, was passed to amend certain sections of the Revenue Act No. 170 of 1898, p. 346, which refers specially, in section 1, to the taxes of 1898 and each succeeding calendar year. It evidently has no application to past years.
Act No. 41, in turn, applies to that property which had been adjudicated to the state “as long as the title thereto is in the state,” and it does not apply to the property claimed in this suit, because the state had parted with its title thereto before the passage of the act.
Act No. 41 of 1912, p. 49, reads as follows:
“Section 1. Be it enacted by the General Assembly of the state of Louisiana, that section 6 of Act No. 315 of the General Assembly of 1910 be amended and re-enacted so as to read as follows:
“Be it further enacted that section (62). sixty-two of Act 170 of 1898 be amended and re-enacted so as to read as follows to wit:
“Sec. 62. Be it further enacted, etc., that if the owner or any person interested personally or as heir, legatee, creditor or otherwise, in any lots or lands bid in for and adjudicated to the state, as long as the title thereto is in the state, shall pay to the treasurer of the state, the taxes, interests and costs and twenty (20) per cent, thereon, the register of the state land office, upon production of the treasurer’s receipt, shall execute and deliver to such persons a certificate of the same under the seal of his office, which shall be held and taken as evidence of the redemption of such land or lands with the name of the persons redeeming the same. The amount paid shall be entered upon the records of lands by said register and he shall immediately and in writing notify the assessor of the parish wherein said redeemed lot or lands are situated of said redemption, provided, no certificate of redemption shall be issued until all taxes, state, parochial, district and municipal, due up to the day of the redemption, have been paid on said property. But all certificates issued under this section shall be in the name of the original owner to enure to the benefit of all persons holding rights under-said owner.” The repealing clause follows.
[4] Defendant argues that be acquired title to the property here involved in 1901, at a time when it was a rule of property that the state was estopped from claiming title to property adjudicated to it for delinquent taxes, where the state authorities had assessed and collected taxes thereon from the tax debtor, subsequent to the time of sale to the state, and that for the courts to hold to the contrary now would be depriving defendant of his property without due process of law, *1027 in violation of the fourteenth amendment of the Constitution of the United States. Defendant cites decisions of the court involving property which was and continued to be in the actual possession of the tax debtor. They do not apply to vacant property, or to this case.
The courts have held, since the adoption of the Constitution of 1898, that, in the language of the Constitution itself, no sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul was instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired, or within three years from the adoption of the Constitution, as to sales already made, and within three years of the date of recordation of the tax deed, as to sales made thereafter, if no notice be given.
Since the adoption of the above provision of law in the Constitution, which is binding upon the courts of the state, no sale of property for taxes may be set aside for any cause, save for the two exceptions made in the Constitution, of dual assessment, or of payment of taxes on the property prior to the day of sale of said property. This change in the law, made in 1898, was made prior to the acquisition of defendant and his authors in title, in 1901. The alleged rule of property, and the act of the assessor in assessing property to its former owner, arid of the collector in collecting taxes from him, are not within the exceptions; and the sale falls within the prohibition of the Constitution that “no sale of property for taxes shall be set aside for any cause”; therefore the causes alleged by defendant cannot prevail.
A provision of law, in line with the above, and with the decisions of the courts of the state, has been adopted by the Legislature in Act No. 315, 1910, § 61, p. 536, in the following words:
“Sec. 61. Be it further enacted, etc., that after property has been adjudicated to the state-in default of a bidder, as provided in section 53, the samo shall be continued to be assessed in the name of the person to whom it belonged at the date of the sale until the lapse of one year from date of recording the act of sale to the state, but the tax collector shall not sell the-same under the assessment and no tax shall be collected or received thereon by the tax collector of or from the former owner while said property remains in a condition of forfeiture to the state and said continued assessment or any erroneous assessment to the former owner thereafter made and no error of the tax collector in receiving taxes under said continuous assessment or other erroneous assessment and noncontinued possession of said property by said former owner shaE ever be considered or, construed by any court of this state as an estoppel of the state from claiming said property or as affecting in way the title of the state to-said property or its rights to possession thereof.”
[5] The above-quoted provision of law refers only to the matter of estoppel, as had been previously decided by the courts of the-state. But the courts have gone further, and we hold that, the title of the tax debtor having been divested by forfeiture and the property adjudicated to the state for delinquent taxes, he has no interest or concern with the-question whether or not the state, acting through the auditor, properly offered the-property so acquired, and properly advertised it before selling it, or not; that said tax debtor had no interest in setting up the invalidity in any respect of the auditor’s deed to a third person; that that was a matter-between the state and its auditor, or the state and the party to whom the property was sold by the auditor. And in the case of Quaker Realty Co. v. Citizens’ Bank of Louisiana, 131 La. 845, 60 South. 367, we cite authorities in support of that principle beginning with the 26' La. Ann. through 123 La. R. Defendant has not been deprived of his property without due process of law.
Defendant selects a few paragraphs from *1029 our decision in the case of Cordill v. Quaker Realty Co., 130 La. 833, 58 South. 819, which might indicate a variance from the settled jurisprudence of the state. The record in that case discloses that Delphine Gravier owned certain property in the city of New Orleans, which had been erroneously assessed in the names of other people for many years prior to her death, and for years subsequent thereto; that it had been forfeited to the state for taxes for the years 1870 to 1877; that Delphine Gravier died in the year 1881; that the property was sold in the year 1885 for the taxes for the year 1882, assessed in the names of some persons other than that of Delphine Gravier; that in 1903 the auditor attempted to sell the property in question to the Quaker Realty Company, as property belonging to the state, having been adjudicated to the state for delinquent taxes for the year 1882. We there held that, Delphine Gravier having died in the year 1881 without heirs, her succession had fallen to the state; that the property formed a part of the free school fund, and that the auditor was without authority to sell property set apart by the state for a public purpose; that Act No. 80 of 1888, as amended by Act 126 of 1896, only authorized the auditor to sell property which had been adjudicated to the state for delinquent taxes; and that this act of sale in 1903 was null and void. Then, in answer to the argument of defendant that the state had acquired the property before the death of Delphine Gravier by forfeiture for taxes during the years 1870 to 1877, we show that the alleged title to the state for the taxes for those years was null and void.
These portions of the opinion were obiter dicta.
Judgment affirmed.
PROVOSTY, J., absent on account of illness, takes no part.